**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANNON H. N., Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| FRANK J. BISIGNANO,[1] Commissioner of Social Security, Defendant. | : | No. 22-653 |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**
**U.S. MAGISTRATE JUDGE**

**July 24, 2026**

Plaintiff Shannon H. N. appeals the Commissioner of Social Security's final decision to deny her claim for benefits. In particular, she contends that the unfavorable decision improperly rejected and ignored relevant opinion evidence contained in the record and, in doing so, omitted some of her credibly established limitations from the residual functional capacity determination and the hypothetical question posed to the vocational expert. The Commissioner disagrees, arguing that the decision to deny benefits comported with the governing regulations and is supported by substantial evidence. For the reasons that follow, I will grant Plaintiff's request for review and remand this matter for further proceedings consistent with this opinion.

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. BACKGROUND

## A. Factual and Procedural History.

Plaintiff was born in July 1974, meaning she was a younger individual at the time of her alleged onset date of July 20, 2018.[2] *See* R. 193. She completed ninth grade, and over the years has worked, among other positions, as a home health aide, bus driver, hotel front desk agent, retail cashier, and laundry sorter. *See* R. 423, 439.

Relevant here, on September 16, 2019, Plaintiff applied for disability insurance benefits ("DIB"). *See* R. 193. In her application, she alleged that she was disabled based on her anxiety, depression, post-traumatic stress disorder ("PTSD"), arthritis, sciatica pain, and chronic pain. *See* R. 193–94. Her disability claim was initially denied January 31, 2020, *see* R. 258–61, and again on reconsideration on July 28, 2020, *see* R. 263–66. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 267–68, and a telephone hearing was held on December 9, 2020, *see* R. 35–70 (hearing transcript). After this hearing, on March 10, 2021, the ALJ issued a written decision denying Plaintiff's claim. *See* R. 18–30. The Appeals Council denied Plaintiff's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R. 1–4. Plaintiff now timely appeals.[3]

---

[2] Plaintiff's prior application for disability benefits was denied on July 19, 2018. *See* R. 225–244. As such, her alleged onset date with respect to the present application is, as it must, the next day—July 20, 2018.

[3] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 14, 15.

**B. ALJ's Decision.**

The ALJ evaluated Plaintiff's claim using the five-step sequential analysis set forth in the Social Security regulations.[4] Beginning at step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the alleged onset date—July 20, 2018.[5] *See* R. 20.

At step two, the ALJ found that Plaintiff suffered from six severe impairments: bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), hypertension, obesity, and a spine disorder. *See* R. 21. Her history of fibromyalgia and asthma, though medically determinable impairments, were deemed non-severe because they have not caused more than minimal limitations on her ability to work. *Id.* Specifically, there was no evidence that Plaintiff sought or required treatment for any symptoms associated with these impairments, nor was there evidence that they caused any functional limitations on Plaintiff's ability to work. *Id.*

Moving on to step three, the ALJ concluded that none of Plaintiff's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. *See* R. 21–23. Specifically, the ALJ compared Plaintiff's impairments to the

[4] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering her residual functional capacity; and (5) whether the claimant can adjust to other work considering her residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

[5] In reaching this conclusion, the ALJ considered the minimal earnings that Plaintiff earned in late 2018 through 2020 from her part-time employment. *See* R. 20 (describing her position as limited to five hours per day, five days a week for ten dollars an hour). However, aside from the fourth quarter of 2019 (where Plaintiff allegedly received an employment-related settlement), none of the other quarters rose to the level of substantial gainful income. *Id.* (listing her income, for example, in the second quarter of 2020 as less than one-hundred-and-fifty dollars).

The ALJ also noted that Plaintiff's date last insured was June 30, 2022. *See* R. 20. To be eligible for disability insurance benefits, the claimant "must establish that their disabling condition(s) began on or before the last day they were insured for disability purposes." 2 SOC. SEC. DISABILITY CLAIMS: PRAC. & PROCEDURE § 22:251 (2d ed. Oct. 2022 update).

impairments included in listing 1.04 (spinal disorders), 4.00 (hypertension), 12.04 (depressive-related disorders), 12.06 (anxiety-related disorders), and 12.15 (trauma-related disorders).[6] *Id.*

Before reaching step four, the ALJ considered Plaintiff's residual functional capacity ("RFC").[7] After reviewing the objective medical evidence and the subjective opinions in the record, the ALJ determined that Plaintiff has the RFC to perform "light work,"[8] subject to the following restrictions:

> [O]ccasional postural maneuvering; no climbing ladders, ropes, or scaffolds; no heights; occasional climbing ramps and stairs; no use of foot controls; frequent reaching, handling and fingering; unskilled, simple, routine tasks with simple decisions; occasional changes in the workplace; occasional interaction with co-workers and supervisors; no direct public interaction; and alternate between standing and sitting every 30–60 minutes with 10 minutes to change her position, but remain on-task.

*See* R. 23–28.

At step four, the ALJ found that given Plaintiff's RFC, she could not perform her past relevant work as a bus driver, cashier, laborer, night auditor, or home attendant. *See* R. 28–29.

The ALJ then proceeded to step five and identified multiple jobs in the national economy that Plaintiff could perform, including sorter, dental floss packer, and fruit cutter. *See* R. 29–30.

---

[6] The ALJ also took Plaintiff's obesity into account when evaluating the other listing impairments, as there is no independent listing for obesity. *See* R. 21.

[7] Residual functional capacity is defined as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[8] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* More specifically, the Social Security Administration has instructed that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.[9] *See* R. 30.

## II. STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

## III. DISCUSSION

Plaintiff appeals the ALJ's unfavorable decision on four grounds. First, she claims that the ALJ improperly rejected the disabling limitations included in the opinions of every treating and examining mental health provider. *See* Doc. No. 10, at 4–20. Second, she alleges that the ALJ erroneously ignored a consulting psychologist's opinion. *Id.* at 20–22. Third, she argues that

[9] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

the ALJ rejected the opinion of her treating family physician for the wrong reasons. *Id.* at 22–26. Fourth, she contends that it was error for the ALJ to rely on the vocational expert's testimony because the ALJ excluded some of Plaintiff's credibly established limitations from the hypothetical question posed to the expert. *Id.* at 26–27. The Commissioner responds that the ALJ correctly evaluated the opinion evidence in the record, and her decision was ultimately supported by substantial evidence. *See* Doc. No. 11, at 5–18. After careful review, I agree with Plaintiff that her second claim—that the ALJ impermissibly ignored one of the consulting examiners' opinions—justifies remand. I will address that claim first below.

**A. The ALJ erred by failing to consider a consulting examiner's opinion.**

Among the alleged deficiencies in the ALJ's decision is the lack of consideration afforded to the opinion of consulting psychologist Dr. Tatyana Mezhevich. *See* Doc. No. 10, at 20–22. According to Plaintiff, the ALJ was required to consider this opinion and assess its persuasiveness at the RFC stage. *Id.* She did not do so, and therefore Plaintiff argues that remand is warranted. *Id.* The Commissioner essentially glosses over this claim, only addressing it in a single paragraph in his response. *See* Doc. No. 11, at 14. There, the Commissioner insists that ALJs are permitted to limit their analyses to evidence that was created *after* the alleged onset date, and because Dr. Mezhevich's opinion was rendered *before* Plaintiff's alleged onset date, the ALJ was allowed to ignore it. *Id.* My review of the case law suggests otherwise, and therefore the ALJ's analysis of the opinion evidence was insufficient.

The facts relevant to this claim are fairly straightforward. On April 26, 2016, in conjunction with a prior application for disability benefits, Plaintiff underwent an independent consultative mental status evaluation with Dr. Mezhevich. *See* R. 183–90. After describing some general background information, including Plaintiff's reported functioning level, Dr. Mezhevich

conducted a mental status examination. *See* R. 183–86. Notable observations were that Plaintiff was sitting in a closed position, shaking, and tearful throughout; appeared older than her stated age; had somewhat "confused and circumstantial" thought process but no evidence of hallucinations; had a depressed affect and dysthymic mood; had mildly impaired attention and concentration due to anxiety; and had mildly impaired memory, along with poor insight and judgment. *Id.* Dr. Mezhevich diagnosed Plaintiff with severe major depressive disorder with recurrent episodes, PTSD by history, rule out generalized anxiety disorder, and a panic disorder. *See* R. 186. Her prognosis was deemed fair. *See* R. 187.

Based on this examination, Dr. Mezhevich completed a medical source statement that opined on Plaintiff's ability to perform mental work-related activities. *See* R. 188–91. Relevant here, Dr. Mezhevich found that Plaintiff had various moderate and marked limitations. *Id.* The moderate limitations included Plaintiff's ability to carry out simple instructions and make judgments on simple work-related decisions. *See* R. 189. The areas that Plaintiff had marked—as serious—limitations were in understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with co-workers; and responding appropriately to usual work situations and changes in a routine work setting. *See* R. 189–90 (citing to Plaintiff's "attention [and] concentration deficits," and her "depressed mood, excessive worry").

The ALJ never addressed these findings. Instead, when crafting Plaintiff's RFC, the ALJ discussed the other medical opinion evidence contained in the record.[10] *See* R. 26–28. Absent

---

[10] The ALJ made the determination as to the Plaintiff's RFC before evaluating the medical opinion evidence in the record. *See* R. 26. Though not error on its own (and not an issue raised by Plaintiff), this choice is confounding. Indeed, it raises questions as to the extent the medical opinions were actually considered when crafting the RFC, or whether the opinions were accepted or rejected to the extent they conformed with the ALJ's predetermined RFC decision.

from this discussion is any reference to Dr. Mezhevich's mental status evaluation and medical source statement, even though they were included in the administrative record. *Id.* This is the basis of Plaintiff's current challenge.

The RFC determination is ultimately an administrative, not medical, decision that is reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2). But to reach this decision the ALJ must first evaluate and weigh the medical opinions in the record. *See* SSR 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996). As part of this analysis, the governing social security regulations[11] require ALJs to evaluate the persuasiveness of *all* medical opinions contained in the record.[12] *See* 20 C.F.R. § 404.1520c(a). The regulations advise that when conducting this analysis, the ALJ should consider, among other factors, the supportability of the opinion,[13] the consistency of the opinion,[14] the medical source's relationship with the claimant (e.g., the length, frequency, purpose, and extent of the relationship), and the medical source's specialization. *See id.* §

[11] Because Plaintiff's claim for social security benefits was filed after March 27, 2017, the new regulations regarding the evaluation of medical opinion evidence govern her claim. *See* 20 C.F.R. § 404.1520c.

[12] "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in the following abilities: . . . . (i) [the]ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] inability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513.

[13] Supportability, in this context, refers to the "extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be.")

[14] Consistency, as referenced in the regulations, refers to "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the [record]." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

404.1520c(c). The most important of these factors are supportability and consistency. *See id.* § 404.1520c(b)(2).

The evaluation of the medical opinions, and the ALJ's RFC determination more generally, must be supported by "a clear and satisfactory" explanation. *See Fargnoli v. Massanari*, 247 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705. This is especially true when there is "conflicting probative evidence in the record." *See Fargnoli*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, she cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07.

The problem, here, is that the ALJ provided *no* explanation, much less an *adequate* one, for rejecting Dr. Mezhevich's opinion. Indeed, there is no reference to Dr. Mezhevich's opinion anywhere in the ALJ's decision. This was error.

The Commissioner briefly attempts to avoid this conclusion by arguing that the ALJ had no obligation to consider Dr. Mezhevich's opinion because it was not relevant—it was rendered prior to the alleged onset date of disability.[15] *See* Doc. No. 11, at 14. The Court is not convinced. As an initial matter, the Court is not aware of any rule, regulation, or other authority that defines "relevant" or so limits relevant evidence only to medical records and opinions that are developed

[15] To support his argument, the Commissioner cites to a single, non-binding decision. *See* Doc. No. 11, at 14 (citing to *Gonzalez v. Colvin*, No. 14-4608, 2016 WL 1463990, at *4 (D.N.J. Apr. 13, 2016)). Upon review, I do not find that case to be persuasive. First, that case was factually distinct: it mostly involved medical *records* and *findings* within an opinion, not entire *opinions*, that the ALJ allegedly ignored. *Gonzalez*, 2016 WL 1463990, at *4. Second, the quote relied on by the Commissioner was attributed to a District of Oregon decision from 2011. *Id.* (quoting *Farley v. Astrue*, No.09-1211, 2011 WL 653895, at *4 (D. Or. Feb. 14, 2011)). Therefore, the Commissioner's response as to this claim is hardly compelling.

within a certain timeframe of the claimant's application date. To the contrary, courts in this circuit have explained that "the mere fact that evidence exists prior to disability onset does not automatically mean that such evidence is not relevant, nor does it relieve an ALJ of the duty to explain why the evidence predating the onset date would not be afforded substantial weight." *McKean v. Colvin*, 150 F. Supp. 3d 406, 414 (M.D. Pa. Mar. 16, 2015); *see also Balthaser v. Kijakazi*, No. 20-6181, 2022 WL 2828848, at *7 (E.D. Pa. July 20, 2022) (Lloret, M.J.) ("It is not permissible to disregard an opinion, without evaluating it, simply because the opinion predates the alleged disability onset date."); *Sperring v. Berryhill*, No. 16-1555, 2018 WL 807165, at *2 (W.D. Pa. Feb. 9, 2018) (explaining that "[a]n ALJ is required to consider *all* medical opinions in the record," and that "[t]he regulations do not carve out an exception for medical opinions which predate the alleged onset of disability" (emphasis in original) (citing to 20 C.F.R. § 404.1527(c)(2))).[16] Here, Plaintiff presented Dr. Mezhevich's opinion regarding her mental health limitations, and it was error for the ALJ to wholly ignore it.

Moreover, the ALJ's failure to consider Dr. Mezhevich's opinion was not harmless. Dr. Mezhevich's opinion included restrictive findings that had they been incorporated into the RFC, Plaintiff may have been unable to perform the jobs identified by the vocational expert and deemed disabled.[17] In addition, the consideration of Dr. Mezhevich's opinion may have impacted

---

[16] "The Third Circuit has also recognized that proper consideration of medical opinions that pre-date the disability onset date requires at least some explanation for rejecting an otherwise-relevant medical opinion in its entirety, and other courts in this Circuit have recommended remand where the ALJ ignored opinion evidence rendered before the disability onset date." *Noble o/b/o J.P.L. v. Kijakazi*, No. 22-3408, 2023 WL 5182604, at *7 n.4 (E.D. Pa. Aug. 11, 2023) (citing to *Giese v. Comm'r of Soc. Sec.*, 251 F. App'x 799, 804 (3d Cir. 2007)).

[17] For example, Dr. Mezhevich opined that Plaintiff had a variety of marked limitations, including responding appropriately to usual work situations and changes in a routine work setting. *See* R. 188. Marked, in this context, is the fourth point on a five-point scale often used by the Social Security Administration, and it is defined as a "serious limitation" and "substantial loss in the ability to effectively function [in this area]." *Id.* Though the RFC determination already included a restriction to occasional changes in the workplace, *see* R. 23, it is not evident that this accommodates for a marked limitation in this area. More importantly, had the ALJ further restricted this area in the RFC, it is possible that Plaintiff would have been found disabled. *Cf. Michelle R. Q. v. Bisignano*, 807 F. Supp. 3d 462, 476 (E.D. Pa. 2025). To be sure, the Court does not express an opinion on how persuasive Dr. Mezhevich's

the ALJ's analysis of the other opinions and evidence in the record, to the extent the opinion is or is not consistent with them,[18] and it may have changed the ALJ's RFC and disability decision.

Therefore, Plaintiff's request for review will be granted. The ALJ is instructed, on remand, to evaluate the persuasiveness of Dr. Mezhevich's opinion as part of her RFC analysis and to provide a detailed explanation for her decision, including a discussion of the relevant regulatory factors (i.e., supportability and consistency).

**B. The remaining claims need not be addressed on appeal.**

Given that I am remanding this case on another claim, Plaintiff's other issues need not be resolved at this time. The ALJ has been directed to reconsider opinion evidence at the RFC stage, which may ultimately impact the RFC determination and render these issues moot. Nevertheless, it may be prudent for the ALJ, on remand, to take this opportunity to reconsider the other opinion evidence of record and provide further explanation as to the persuasiveness of those opinions, including identifying what findings were or were not accepted and discussing the extent that the opinions are supported and consistent with the other medical evidence.

opinion on this matter is or whether a restriction to occasional changes sufficiently accommodates a marked restriction. I simply note that this demonstrates that the ALJ's failure to consider the opinion was not harmless.

[18] For example, the consulting examiner's opinion from 2021 also found Plaintiff was markedly limited in her ability to respond appropriately to usual work situations and changes in a routine work setting. *See* R. 713. Had the ALJ considered the prior opinion, she may have found the consistency between them to be persuasive and adopt more stringent restrictions in the RFC, resulting in a finding of disability.

## IV. CONCLUSION

For the reasons explained above, Plaintiff Shannon H. N.'s request for review is **GRANTED**. The ALJ improperly ignored a consulting examiner's opinion without explanation. Therefore, the final decision of the Commissioner of Social Security is **REVERSED,** and this matter is **REMANDED** to the Commissioner for further proceedings consistent with this memorandum opinion. An appropriate order follows.

BY THE COURT:

*s/Pamela A. Carlos*
PAMELA A. CARLOS
U.S. Magistrate Judge